IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT Knoxville
Assigned on Briefs July 26, 2005

## JUAN ALFONZO HILL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Washington County**
**No. 25403      Robert E. Cupp, Judge**

---

**No. E2004-02915-CCA-R3-PC - Filed September 19, 2005**

---

The petitioner appeals from the denial of his petition for post-conviction relief. On appeal, he contends that: (1) he was denied the effective assistance of trial counsel, and (2) the post-conviction court and the district attorney general erred in failing to comply with the Post Conviction Procedure Act, which caused him prejudice. Following our review, we affirm the judgment of the post-conviction court denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Gary R. Wade, P.J. and David H. Welles, J., joined.

William L. Francisco, Johnson City, Tennessee, for the appellant, Juan Alfonzo Hill.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Dennis Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS & PROCEDURAL HISTORY

The petitioner, Juan Alfonzo Hill, was convicted by jury of rape of a child and received a thirty-five year sentence as Range II, multiple offender. On direct appeal, this Court affirmed the petitioner's conviction and sentence, and the Tennessee Supreme Court denied his Rule 11 application for permission to appeal. See State v. Juan Alfonzo Hill, No. 03C01-9710-CR-00441, 1999 WL 222370 (Tenn. Crim. App., at Knoxville, Apr. 8, 1999), *perm. app. denied* (Tenn. Sept. 20, 1999). The following is a brief synopsis of the convicting evidence set forth in this Court's opinion on direct appeal:

The record in this case reveals that the defendant lived with the victim, then seven years old, and the victim's mother. It reflects that on the night of May 16, 1994, when the defendant and victim were home and the victim's mother was gone, the defendant had sexual intercourse with the victim. Before trial, the defendant made a statement to Sergeant Debbie Barron in which he claimed that as he was falling asleep on the night of the offense, the victim climbed on top of him and began moving on his penis with her vagina. He claimed that he did not know why he had an erection but that when he woke up, he pushed off the victim and told her to go to bed. At trial, however, the defendant testified that he was with the victim's mother on the night of May 16 and was never alone with the victim that night. He denied raping the victim.

Hill, 1999 WL 222370 at *1.

On July 9, 1999, the petitioner filed a *pro se* petition for post-conviction relief. Thereafter, the post-conviction court dismissed the petition because the petitioner's application for permission to appeal to the Tennessee Supreme Court was presently pending. After the Tennessee Supreme Court denied the petitioner's Rule 11 application on September 20, 1999, the petitioner filed a *pro se* "Motion to Reconsider and/or In the Alternate Refile Same Petition" on October 11, 1999. Because the petitioner received no response, he subsequently filed a "Motion for Determination of Status of Case" on May 15, 2000, and July 27, 2000. On August 24, 2000, the petitioner filed a "Writ of Alternative Mandamus" requesting response to his previously filed motions. On November 7, 2000, the petitioner wrote a letter to the post-conviction court requesting a response to his previously filed motions and asking for appointment of an attorney. On August 31, 2001, the post-conviction court entered an order setting aside its previous order dismissing the petitioner's petition and appointed counsel. The petitioner's counsel was given thirty days to amend the petitioner's petition. On September 28, 2001, the post-conviction court granted the petitioner's counsel a sixty-day continuance to interview witnesses and prepare an amended petition. An additional thirty-day continuance was granted to petitioner's counsel to allow more time to interview witnesses. On January 3, 2002, the petitioner filed an amended petition. After a number of continuances and motions, a hearing was set for November 3, 2003.

At the post-conviction hearing, the petitioner testified that his trial counsel only met with him three times before trial. The petitioner stated that he gave a list of alibi witnesses to counsel and counsel failed to investigate these witnesses. In particular, the petitioner said that counsel failed to investigate Michelle Anderson, the victim's mother; Denise Avery and Chaka Parks, the victim's babysitters; and Tony Anderson, the victim's uncle. The petitioner claimed that Ms. Anderson would have testified that on May 16, 1994, he took her out to a bar for her birthday. The petitioner further claimed that both Ms. Avery and Mr. Anderson were in the house watching the victim on May 16, 1994, while he and the victim's mother were out of the house.

The petitioner testified that Police Officer Debbie Barron made corrections to his statement, which he did not approve. However, the petitioner acknowledged that he read and signed the

statement. The petitioner was allowed to strike through the portions of the statement that he felt were not stated to the officer. On cross-examination, the petitioner denied telling Officer Barron and trial counsel that he penetrated the victim. The petitioner also asserted that he provided notice of alibi witnesses to the public defender's office, which had represented him prior to representation by trial counsel. However, he could not explain why both the public defender's office and trial counsel did not file a notice of alibi. Upon inquiry by the post-conviction court, the petitioner testified that he voluntarily took the witness stand at trial knowing he had made a prior statement to police and had a prior felony conviction. As the petitioner explained, he "had to tell where [he and his alibi] was at."

The petitioner's trial counsel testified that he was appointed to represent the petitioner in late 1996 or early 1997. Counsel testified that he had reported three "one hour conferences" with the petitioner but asserted he spent more time with the petitioner. As counsel explained:

> At that time the cap on fees . . . was a thousand dollars for this type of case so I did not put down every time that I talked to [the petitioner] or did other things. . . . [T]here were other times that I met with him or talked to him, I'm sure, during the course of representation, during his court appearances, prior to his court appearances here, and maybe other times at the jail, but again I'm not going to say that I was there more than what the time indicates, but I know I spent more time with him.

Counsel stated that the petitioner indicated to him that "there were times during [May 16, 1994] where he could account for his time and indicated that he told the police that . . . he had not been alone with the girl for certain times during that day." Counsel recalled that the petitioner discussed alibi and other witnesses with him, but he did not recall when these discussions occurred or whether the petitioner offered alibi witnesses for the evening of May 16, 1994.

Counsel testified that the petitioner told him about the statement made to police. According to Counsel, the petitioner told him that

> he was on the couch, lying there . . . . He'd been watching TV or something. The little girl comes in . . . climbed up on top of him, and he said he had had an erection. Seems like he said it was like, you know, one of those you get when your're . . . asleep or something like that. And that she apparanetly had climbed up on him and had straddled him and was on him, on his penis.

Counsel recalled that the petitioner said he was "on pills, he was drunk, that he knew what it was like to be a molested child, that he felt sorry for [the victim] and that he had to . . . take up for her . . . that he was helping her some way to say this." Counsel also recalled that the petitioner claimed he was on drugs when he gave the initial statement to police. Counsel stated that the petitioner subsequently called police and gave another statement, which was similar to his first statement. Counsel did not recall filing a motion to suppress the petitioner's original statement "based on the fact that . . . [the

-3-

petitioner's second statement] didn't seem to alter much of what he had said the first time." Counsel stated that he reviewed this statement prior to it being placed into evidence at trial.

Counsel testified that he had attempted to locate and subpoena the potential witnesses given to him by the petitioner. He stated that every witness the petitioner wanted him to "talk to or subpoena that [he] could get in touch with . . . were either subpoenaed in and [he] talked to them or [he] talked to them and discussed [the conversation with the petitioner]." Counsel explained that after the petitioner gave him a list of potential witnesses, he attempted to call them, but the petitioner had given some "phone numbers and some addresses . . . some of which were good and not good." Counsel further stated that he had the constable try to locate some of the witnesses, and "if there was a witness [he] couldn't locate, [he] told that to [the petitioner] to see what he wanted to do." However, Counsel acknowledged that he did not locate any witnesses who could confirm the whereabouts of the victim on May 16, 1994, other than "her being at home." He stated that he could not locate Ms. Parks and did not recall if Ms. Avery had been mentioned to him. Counsel further stated that he did not contact Ms. Anderson because of the "adverse situation."

With regard to the petitioner's alibi witnesses, Counsel testified that the petitioner told him that "he had witnesses for parts of the night, that he had gone out and . . . that there was somebody else there with him." However, Counsel stated that he did not recall if the petitioner ever told him that Ms. Anderson was "one of those people that was with him that evening." Instead, Counsel recalled that the petitioner had told him generally that he went out and saw Ms. Anderson clubbing, but Counsel denied knowing what date and time the petitioner was referring to. Counsel testified that he did not give notice of an alibi defense because he could not find any credible evidence of an alibi to fill all the holes in the nighttime hours of May 16th, and because the petitioner had made incriminating statements as to what happened between him and the victim. Counsel admitted that petitioner indicated in his statement to police that he had alibi witnesses that could "cover [him] from those dates."

With regard to jury selection, Counsel acknowledged that there was some media coverage of the petitioner's trial, but claimed that the trial judge usually asked jurors if they had "read or seen anything about the case." Counsel stated that he consulted with the petitioner about striking various jurors and did not recall anything alarming about the selection process. Counsel also stated that the petitioner told him that he was satisfied with the jury selection. Counsel admitted that he utilized seven challenges during jury selection.

Counsel admitted that in hindsight he should have investigated Ms. Anderson's employment records because her whereabouts became an issue at trial when Jackie Hale, Ms. Anderson's grandmother, insisted Ms. Anderson was at work the evening of May 16th. Counsel acknowledged that the employment records indicated that Ms. Anderson was terminated from her job on May 10th for absenteeism. Counsel admitted that this information would have been helpful in discrediting Ms. Hale's testimony. However, Counsel asserted that after Ms. Hale's testimony, he consulted with the petitioner and the petitioner believed "his testimony would carry the day" and did not want to postpone the trial to try and get the employment records. Counsel also admitted that he did not

-4-

review the videotape of the interview with the victim, which may have aided him in drawing out inconsistencies or contradictions in her testimony. According to Counsel, the victim told Tracy Bennington, a case worker from the Department of Human Services, that the petitioner put his penis in her private part. Nonetheless, Counsel stated that he read the transcript of the interview and he did not recall inconsistency between the testimonies of Ms. Bennington and the victim at trial and the transcripts. Counsel further stated that Dr. Boyce Berry testified that the victim had a "large torn area in her hymen [that would] admit one finger breadth easily."

Counsel testified that he conferred with the petitioner about testifying at trial. Counsel explained:

> I told him he could expect being cross-examined . . . about a number of issues, and that that was a problem. But at the same time he wanted to testify. He was very insistent, as I recall, that he testify. He was not a reluctant witness on his own behalf. He was chomping at the bit to testify . . . .

The post-conviction court entered an order denying the petitioner's petition for post-conviction relief. Relevant to this appeal, the court found that the petitioner's allegation of ineffective assistance of counsel was without merit because the petitioner failed to show prejudice entitling him to relief. The court stated:

> The final matter raised by the Petitioner is [Counsel's] failure to call certain witnesses, and in particularly witnesses who he says could establish an alibi for him. . . .
>
> . . . .
>
> The record shows that Petitioner gave a page and half statement to Lieutenant Barren [sic] . . . about his involvement with this seven (7) year old child. The statement, without question, was very detrimental to this Petitioner. He testified that most of the words in his statement were those of Lieutenant Barrens [sic], and not his. He says that he signed the statement because Lieutenant Barren [sic] had promised him that she would make corrections to reflect only what he told her.
>
> As a result of Petitioner's testimony, this Court asked the Petitioner, in Exhibit Number 6, to mark with a green marker any part of the statement that he says he did not make. Interestingly, if one would take out the words marked in green, the statement would still say that the Petitioner was watching T.V. with the victim and that he fell asleep but was awakened by the victim who asked if she could give the petitioner a hug. That the victim got on top of him, that he was half asleep, and that this seven (7) year old girl was moving on his penis with her vagina, that he woke up and realized what was going on and push her off, and told her to go to bed. In other

words, eliminating the parts of the statement marked in green, Petitioner tells us that this seven (7) year old girl was attempting to have sex with him.

Now mind you, with this background, this Petitioner insist[ed] that he take the witness stand after being advised by [Counsel] that it would be a mistake. [Counsel's advice] went unheeded, and the Petitioner proceeded to try to attempt to explain away [sic] a seven (7) year old having sex with him. Logic tells us that anything stated by this Petitioner that downplays the significance of this statement will not be taken lightly by this jury, and the verdict shows that.

Therefore, it is quite apparent that Petitioner has failed to show that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. In other words, this Petitioner has failed to show that there was a deficiency in his trial lawyer, and that because of that it deprived Petitioner of a fair trial. For sure it did not call into question the reliability of the outcome. The Court, in reaching this conclusion finds that statements or a confession by the petitioner does not eliminate counsel's duty to investigate. Strickland. However, the reasonableness of counsel's actions "may be determined or substantially influenced by the defendant's own statement's or actions." This was the dilemma facing [Counsel], that is, the insistence by this Petitioner that alibi witnesses be put on the witness stand when confronted with a statement which in essence alleges that a seven (7) year old girl attempted to have sex with this Petitioner. [Counsel] would have been crazier than a "hoot" to attempt to establish an alibi in the face of Petitioner's statement.

## ANALYSIS

In his appellate brief, the petitioner argues that the post-conviction court erred in finding that he received the effective assistance of counsel. Specifically, the petitioner claims that Counsel failed to investigate witnesses, who could corroborate both his alibi defense and the fact that he was intoxicated at the time he gave the incriminating statement to police. The petitioner contends that the trial court's emphasis on his marking out certain words in his statement was in error because this action at the post-conviction hearing did "not reflect what [the petitioner] was actually testifying [at trial]."

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this Court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is de novo with a presumption that the findings are correct. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. Id.

To establish ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Arnold v. State, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. Strickland, 466 U.S. at 688; see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. Id. at 697; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Also, a fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. Goad, 938 S.W.2d at 369. However, deference is given to strategy and tactical decisions only if the decisions are informed ones based upon adequate preparation. Id. (citations omitted).

Upon review, we conclude that the petitioner failed to prove his claim of ineffective assistance of counsel by clear and convincing evidence. Even assuming counsel did commit some error in investigating the petitioner's witnesses, the petitioner failed to demonstrate prejudice. If prejudice is absent, there is no need to examine allegations of deficient performance. Strickland, 466 U.S. at 697. First, the petitioner did not present at the post-conviction hearing the witnesses he claimed would have provided an alibi defense and corroborated his testimony regarding his whereabouts on May 16, 1994. As a general rule, the presentation of these witnesses at the post-conviction hearing is necessary to prove that counsel's failure to utilize these witnesses resulted in prejudice to the petitioner. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither the post-conviction court nor this Court may speculate on what a witness' testimony might have been if introduced by counsel. Id.

Second, the petitioner failed to include a transcript of the trial proceedings as part of the appellate record. "When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies," this Court cannot consider the merits of that issue. Id. at 560-61; see also Tenn. R. App. P. 24(b). Because this Court is unable to review the trial transcript, we cannot determine if the petitioner's trial was prejudiced by trial counsel's errors, as alleged, and must conclusively presume that the post-conviction court's ruling on this issue is correct. See State v. Draper, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990).

Finally, notwithstanding the petitioner's failure to present witnesses at the post-conviction hearing and failure to prepare a complete and accurate record for appeal, the record of the post-conviction proceeding reflects that the petitioner made two incriminating statements to police implicating him in child rape. Even assuming that the petitioner was intoxicated when he gave his first statement, the record reflects that he gave a subsequent statement to police that was similar to his first. He also told his trial counsel his version of the event, which corroborated his statements to police. Moreover, at the post-conviction hearing, the petitioner was given the opportunity to strike through any portion of his statement he believed to be incorrect. After doing so, the petitioner's statement remained incriminating, placing the petitioner home alone with the victim doing things that still constitute child rape. The post-conviction court obviously found the petitioner's allegations incredible. We agree. Accordingly, we conclude that the petitioner failed to prove ineffective assistance of counsel and is not entitled to relief on this issue.

The petitioner also argues that the post-conviction court and the district attorney general erred in failing to comply with the procedural rules of the Post Conviction Procedure Act, which caused him prejudice and entitles him to relief or a new evidentiary hearing. Specifically, he complains of the lengthy delay of approximately four years between the date his post-conviction petition was filed and his post-conviction hearing. He asserts that as "time passed, it became impossible to locate the witnesses who should have been called to testify at trial." He also asserts that he was prejudiced by the State's failure to timely respond to the petitioner's amended petition for post-conviction relief and failure to include a trial transcript for the record. The State argues that this issue is completely without merit because the petitioner received a full and fair hearing. The State also argues that it is not the State's duty to prepare a complete and accurate record on appeal but rather the petitioner's duty. The State asserts the petitioner had opportunity to include the trial transcript at the post-conviction hearing but chose not to.

The Post Conviction Procedure Act provides in relevant part that the court to whom the post-conviction case is assigned shall, upon examination of all records and documents pertinent to the case, dismiss the case or enter a preliminary order designating further consideration of the case within thirty days of the date of the original filing or amended petition. Tenn. Code Ann. § 40-30-106. Also, the State, upon receiving the petition from the court clerk, shall file an answer within thirty days, unless extended for good cause. Id. § 40-30-108. However, failure by the State to timely respond does not entitle the petitioner to relief under the Post-Conviction Procedure Act. Id. The court shall review the case after the State's response is filed. Id. § 40-30-109. If petition is not dismissed, the judge shall enter an order setting an evidentiary hearing within thirty days after the filing of the State's response. Id. The evidentiary hearing shall be within four calendar months of the entry of the court's order. Id. Such deadline may be extended only by order of the court based upon a finding that unforeseeable circumstances render a continuance a manifest necessity. Such extension shall not exceed sixty days. Id. Upon the conclusion of the proof, the court shall rule within sixty days. Id. § 40-30-111(d). Such deadline may be extended only by order of the court based upon a finding that unforeseeable circumstances render a continuance a manifest necessity. Id. Such extension shall not exceed thirty days. Id.

Initially, we note that the petitioner correctly contends that the post-conviction court violated the time requirements of the Post-Conviction Procedure Act. The record reflects that there was extensive delay from the date the post-conviction petition was filed to the evidentiary hearing and from the date of the conclusion of proof at the evidentiary hearing to the final order denying post-conviction relief. However, this Court has previously held that the post-conviction court's noncompliance with the time strictures of the Post-Conviction Procedure Act does not entitle the petitioner to post-conviction relief. We have stated that nothing in the Post-Conviction Procedure Act prescribes either a remedy or a sanction for a post-conviction court's failure to comply with the time limits set out in the Act. See Kelvin Wade Cloyd v. State, No. E2003-00125-CCA-R3-PC, 2003 WL 22477866, at *17 (Tenn. Crim. App., at Knoxville Nov. 3, 2003), *perm. app. denied* (Tenn. Jan. 26, 2004). We have further stated that there is no indication from the language of the Post-Conviction Procedure Act that a petitioner is entitled to relief simply because of non-compliance of performing an act within a certain period of time. See Johnny O. Clark v. State, No. W2001-02856-CCA-R3-PC, 2002 WL 1841630, at *10 (Tenn. Crim. App., at Jackson, Aug. 8, 2002), *perm. app. denied* (Tenn. Dec. 23, 2002) (citation omitted).

Although we do not condone the extensive delay of the petitioner's case, we conclude that the petitioner was afforded a full and fair evidentiary hearing wherein he was given every opportunity to present evidence and argument with respect to his claims. The record reflects that the post-conviction court liberally granted the petitioner's motions for continuance to allow more time to interview witnesses. Of course, these continuances, requested by the petitioner, constitute some of the delay in the post-conviction proceedings. Also of interest is the fact that one of the petitioner's motions for continuance expressly states that "most of the witnesses identified on the Petitioner's Pro Se list in his Pro Se Petition have been located, and counsel needs additional time to conduct an appropriate interview with said witnesses." This statement contradicts the petitioner's assertion on appeal that he was prejudiced by the delay because he was unable to locate certain witnesses due to the passage of time. Additionally, the record reflects that the petitioner through his attorney had opportunity to include the trial transcript in the record. At the end of the post-conviction hearing, the court asked the petitioner's post-conviction counsel whether he wanted to file the trial transcript with the court. Petitioner's post-conviction counsel stated "I hadn't planned on it." Therefore, contrary to the petitioner's assertions on appeal, the petitioner chose not to include the trial transcript on appeal. As previously indicated, where the trial transcript is necessary to the determination of an issue, the failure of the petitioner to include the trial transcript prevents this Court from considering the merits of the issue. Accordingly, we conclude that the petitioner received a full and fair hearing of his post-conviction claims, and the petitioner is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the post-conviction court's order denying post-conviction relief.

_____
J.C. McLIN, JUDGE